**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES, CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 19-742C |
| | )   (Judge Lydia Kay Griggsby) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED LAUNCH SERVICES, LLC; BLUE ORIGIN, LLC; and ORBITAL SCIENCES CORPORATION, | ) |
| | ) |
| Intervenor-Defendants. | ) |

**UNITED LAUNCH SERVICES, LLC'S RESPONSE TO**
**PLAINTIFF'S OPPOSITION TO INSIDE COUNSEL'S**
**APPLICATION FOR ACCESS TO INFORMATION UNDER PROTECTIVE ORDER**

Intervenor United Launch Services, LLC ("ULS") submits this Response to Plaintiff Space Exploration Technologies Corporation's ("SpaceX's") Opposition to ULS Inside Counsel Ralph A. Bauer's Application for Access to Information Under the Protective Order in the above-captioned case. For the reasons explained herein, ULS respectfully requests that the Court **GRANT** Mr. Bauer's Application for Access to Information Under the Protective Order.

## Introduction

This complex matter involves the United States Air Force's award of three "Other Transaction" ("OT") agreements valued at more than $2 billion for the development of launch system prototypes that will enable domestic industry to provide commercial launch services meeting all National Security Space requirements. As the world's most reliable space launch

provider with an unblemished track record of 100 percent mission success across 133 consecutive launches since the company's inception in 2006, United Launch Alliance, LLC ("ULA"), through its subsidiary, ULS, received an OT agreement valued at approximately $1 billion to support the development of its new "Vulcan" launch vehicle.  SpaceX challenges that award, among others, in this matter.  The Air Force's awards (and this subsequent protest) are of the utmost importance to the space launch community.  Indeed, not one, but *two* inside attorneys from another intervenor, Orbital Sciences Corporation ("Orbital"), have been admitted to the Protective Order in this proceeding.  (*See* ECF Nos. 40, 41.)

In its objection to Inside Counsel Bauer's application, SpaceX falls far short of demonstrating that Mr. Bauer should be denied admission to the Protective Order.  ULS has made a *clear and unrebutted factual record* that Mr. Bauer is not and will not be involved in competitive decision-making at ULS.  (*See, e.g.*, Ralph A. Bauer Application for Access to Information Under Protective Order by Inside Counsel (the "Application") and Supplemental Statement in Support of the Application (the "Supplemental Statement"), ECF No. 55 at 4-5, ¶ (a) ("I do not now and will not in the future provide advice or participate in decisions about marketing or advertising strategies, product research and development, product design or competitive structuring and composition of bids, offers, or proposals with respect to which the use of protected material could provide a competitive advantage.").  ULS has also made a *clear and unrebutted factual record* regarding the specific and substantial protections it has implemented to ensure that Mr. Bauer's access to protected information would not be communicated to or shared with others at ULS.  (*See id.* at 5.)  Finally, ULS has made a *clear and unrebutted factual record* of the background of Mr. Bauer – as a member of this Court and an Air Force attorney who represented the Air Force in litigation proceedings before this Court,

rose to the rank of Colonel during 24 years of military service, and maintained a high level security clearance – that clearly mitigates SpaceX's speculative and vague assertions that Mr. Bauer might breach the express representations and obligations to safeguard protected information, to which he has certified here without exception.

In response to ULS' specific, factual submission, SpaceX offers only generalized concerns and speculation, but not one piece of factual evidence.  The essence of SpaceX's objection appears to be three-fold:

*First*, SpaceX argues that, regardless of the limitations and protections ULS has put in place, and regardless of his military background and experience representing the Air Force before this Court, Mr. Bauer should not be granted access to information covered by the Protective Order because the information is too sensitive.  This broad argument would preclude the admission of inside counsel in essentially every protest.  But the relevant rules specifically contemplate the admission of inside counsel, allowing inside counsel to apply for admission through a standard form issued by the Court (Form 9) that requires each inside counsel to certify, like any counsel applicant, that they are not involved in competitive decision-making and will "comply in all respects with [the Protective Order and] abide by its terms and conditions in handling any protected information produced in connection with this proceeding."  Mr. Bauer has provided these certifications, which ULS bolstered through substantial safeguards put in place to ensure that there will be no inadvertent disclosure resulting from Mr. Bauer's admission. These safeguards are nearly identical to those imposed by Orbital on both of its admitted inside counsel, to whose applications SpaceX had no objection.  (*See* ECF Nos. 40, 41.)

*Second*, SpaceX's objection appears to be premised on the additional notion that any past work by an inside attorney that could be framed as competitive decision-making is wholly

prohibitive to admission under a Protective Order, even where the applicant is able to make every representation and certification required by the Court, as Mr. Bauer has done here. Yet, there is no statute, regulation, rule, or precedent that sets forth any such prohibition – nor has SpaceX cited any. This Court's standard-form application does not require certification that an attorney has never engaged in competitive decision-making. Instead, the requirements governing the Protective Order are expressly forward-looking and focus on the factors and circumstances requisite to the protection of information *after* it has been accessed. Although SpaceX urges this Court to take its suggested prohibition at face value, it is not the law, and SpaceX offers no logical or viable reason that it should be. Indeed, SpaceX has not demonstrated – or even attempted to explain – how past involvement in a competitive issue by Mr. Bauer would give ULS an unfair competitive advantage if he is admitted under this Protective Order, when he has attested to the required certifications and in light of the organizational, technical, and physical protections ULS has implemented to safeguard the process.

*Third*, SpaceX conclusively states – without any acknowledgement of Mr. Bauer's background or the extensive allegations that SpaceX directed specifically (and often, solely) at ULS throughout the 229 paragraphs of its Complaint – that "ULS does not need its in-house counsel to access protected information to 'effectively represent its position.'" (ECF No. 58 at 3.) The reality is that Mr. Bauer's significant knowledge and experience with national security launch services, gained through years of military service and work in the commercial launch service sector, along with his understanding of ULS' historical Air Force contracts that are allegedly the basis of the most central allegations that SpaceX asserts against ULS, would provide an unequalled resource to the ULS legal team. While we appreciate SpaceX's endorsement of the McGuireWoods legal team (ECF No. 58 at 3), the fact is that none of the

attorneys presently admitted for ULS possess Mr. Bauer's background or depth of understanding of the ULS-specific facts and issues that SpaceX has presented in its Complaint.  ULS respectfully asserts that Mr. Bauer's admission is critical to obtaining effective representation.

Notwithstanding SpaceX's unfounded arguments, the ultimate question is whether Mr. Bauer's admission poses an undue risk to the competitive process.  To that end, Mr. Bauer has attested, as required, to the most critical protections in this process – that he will not engage in competitive decision-making for ULA, ULS, or any other entity.  (*See* ECF No. 55 at 4-5.) Notwithstanding SpaceX's implicit attack on his character, Mr. Bauer's unique background, experience, and military service provides a compelling rationale for the Court to find that he will follow the obligations to which he has committed in the Application, including his acknowledgement in Paragraph 10 of the sanctions that may be imposed for any violation.

## Argument

The Federal Circuit has held that "access [to a protective order] should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained."  *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984).  Pursuant to the Rules of the United States Court of Federal Claims ("RCFC") and against this standard, this Court should "consider such factors as [1] the nature and sensitivity of the information at issue, [2] the party's need for access to the information in order to effectively represent its position, [3] the overall number of applications received, and [4] any other concerns that may affect the risk of inadvertent disclosure" when ruling on an application for admission to a protective order. RCFC, Appendix C ¶ 18(c).  These factors provide more than ample justification for granting Mr. Bauer's application for admission under the Protective Order.

**1.    While the Protected Information at Issue in this Matter Is Sensitive, ULS' Extensive Safeguards Have Mitigated Any Risk of Inadvertent Disclosure**

With respect to the first factor, the parties do not dispute that the Protected Information in this matter is highly sensitive and of a confidential and proprietary nature.  Nonetheless, ULS has effectively addressed and mitigated concerns raised by SpaceX regarding the risk of inadvertent disclosure of protected materials.  As a longstanding member of the Bar of this Court, Mr. Bauer made multiple representations in the Application and Supplemental Statement that he is not involved in competitive decision-making and will not be involved in such activities in the future. (*See, e.g.*, ECF No. 55, at 1, ¶ 4 ("I am not involved in competitive decision making as discussed in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), for or on behalf of the party I represent, any entity that is an interested party to this proceeding, or any other firm that might gain a competitive advantage from access to the information disclosed under the Protective Order."), and at 4, ¶ (a) ("I am not now and will not in the future be involved in competitive decision-making for or on behalf of ULA, ULS, or any other entity.").)

Recognizing the sensitivity of the Protected Information in this matter, the Supplemental Statement details the specific safeguards imposed by ULS to mitigate the risk of inadvertent disclosure, in three specific areas:

*First*, ULA has limited Mr. Bauer's responsibilities to substantive areas that do not include any competitive decision-making activities.  (*See* ECF No. 55, at 4, ¶ (a) ("I am currently responsible for providing legal counsel and support related to the following ULA functions: human resources; ethics; risk management; real estate, facilities, and property; tax; safety, health, and environmental affairs; information management; data protection; global trade; and litigation management.").)  Regarding any procurement-related activities, Mr. Bauer certified that his "role in procurement-related matters is now and will be limited in the future to providing legal counsel

support with regard to anticipated and pending disputes and litigation." (*Id.*)  This Court has generally found such limitations acceptable as to inside counsel, including with respect to inside counsel for Orbital in this matter.  (*See* ECF No. 40 at 5, ¶ (a) (stating that "[m]y role in procurement matters is limited to providing legal counsel and support with regard to anticipated disputes and litigation."); ECF No. 41 at 4, ¶ (a) (same).)  In fact, ULS specifically tailored Mr. Bauer's responsibilities on a going-forward basis to ensure his isolation from competitive decision-making activities and enable his ability to access materials under Protective Order in this, and potentially future, bid protest matters.

*Second*, there are location and organizational restrictions in place, physically separating Mr. Bauer from those who participate in competitive decision-making.  For example, Mr. Bauer is the only lawyer at ULA's Rosslyn, Virginia office, which is functionally, organizationally, and physically separate from the individuals making competitive and procurement-related decisions at the ULA headquarters in Centennial, Colorado.  (*See* ECF No. 55, at 5, ¶ (c), (d).)  Mr. Bauer's Rosslyn office is also "enclosed and separate from anyone in that location who might be involved in competitive decision-making." (*Id.*)  Although Mr. Bauer reports to ULA's General Counsel, Thomas Tshudy, he is physically separate from Mr. Tshudy, does not report to other attorneys directly involved in the preparation, negotiation, or documentation of proposals, and has represented that he will not disclose Protected Information to anyone not admitted to the Protective Order, which would include Mr. Tshudy and anyone else who is involved in the proposal process. (*See id.* at 2, ¶ 9.)

*Third*, Mr. Bauer has committed to accessing Protected Information only "(1) on a secure, password protected website set up by outside counsel using a computer in a non-ULA, secure location that does not connect to a ULA network or (2) at outside counsel's offices." (*Id.* at ¶ (e).)

As such, under these restrictions, he is not permitted to copy Protected Information or otherwise

access it from or maintain Protected Information in any other area.

Each of these limitations is substantively similar to, if not the same as, those limitations

Orbital placed upon the two previously admitted inside counsel.  Notably, SpaceX did not object

to either of those applications, yet paradoxically represents that the same protections are

insufficient as to Mr. Bauer.  ULS has demonstrated that, although the protected information in

this matter his highly sensitive, admission of Mr. Bauer does not risk improper disclosure.

> **2.**     **Mr. Bauer's Participation in this Matter Is Necessary for ULS to Effectively Represent Its Position Based on His Deep Background and Significant Experience with the Specific Assertions SpaceX Has Raised in its Complaint**

The second factor also weighs heavily in favor of Mr. Bauer's admission.  SpaceX's

objection conclusively asserts, with neither any reference to its own Complaint nor Mr. Bauer's

unique background, that there is "no need for in-house counsel to be admitted to the Protective

Order at this juncture."  (ECF No. 58 at 4.)  However, even a cursory reading of SpaceX's 78-

page, 229-paragraph Complaint makes plain that inside counsel for ULS will be essential for

ULS to effectively represent its position, as the standard requires.

Most importantly, Mr. Bauer understands the key elements of ULS' launch vehicle

systems and pre-existing contracts with the Air Force, with which SpaceX has taken issue

here.  The Complaint directly attacks ULS, its history, and its contracts with the Air Force more

so than any other awardee.  It is beyond dispute that Mr. Bauer, who has worked at ULS, learned

its history firsthand, and understands these unique contracts and systems will be of critical

importance to address and refute these unsupported and unfounded allegations.  For example,

following a Statement of Facts comprising 29 pages and 73 paragraphs, SpaceX alleges in Count

I that the Air Force failed to properly account for ULS' prior work with the Air Force, under the

EELV Launch Capability ("ELC") contract.  (Redacted Compl., ECF No. 14 at ¶¶ 124-131.)  These allegations purport to state the purpose, scope, and value of work actually performed by ULS under the ELC contract, which was part of the unique contract structure implemented by the Air Force under the prior phase of the Evolved Expendable Launch Vehicle Program.  Inside counsel from ULS is best positioned to understand, describe, and, where necessary, refute any allegations related to this particularly unique contract structure.  Similarly, SpaceX alleges in Count IV that the Air Force improperly evaluated commonalities between the preexisting ULS launch vehicles and the Vulcan launch vehicle at issue in the LSA OT agreement.  (*Id.* at ¶¶ 198-202.)  Again, Mr. Bauer as inside counsel is uniquely positioned to assist with understanding and addressing these allegations based on the knowledge he has gained at ULA and about which outside counsel has limited background.

Mr. Bauer also brings unique, industry-specific experience that will significantly assist counsel in representing ULS' position in this matter.  Mr. Bauer is a former Air Force officer who worked on launch service-related issues during his nearly twenty-five year legal career in military service, from which he retired as a Colonel.  (ECF No. 55 at 4, ¶ (a).)  His last assignment was as the Staff Judge Advocate to the 14th Air Force, under Air Force Space Command, at Vandenberg Air Force base, one of the Air Force's two space launch sites.  In this position, he worked on various issues directly related to the launch service industry, including launch vehicle and related infrastructure issues.  Mr. Bauer also has significant commercial industry experience from his tenure at International Launch Service, Inc. ("ILS"), a commercial launch service provider for which he served as General Counsel (among other roles).  At ILS (and ULA), he has gained significant insight into key elements of launch service contracting and technical considerations.

With this background, Mr. Bauer will assist outside counsel in this matter far beyond basic general supervision and guidance as alleged by SpaceX.  (ECF No. 58 at 3.)  He brings a significant, critical launch service industry-specific perspective, far exceeding outside counsel's experience, which will necessarily undergird our defense of the Air Force's approximately $1 billion OT agreement award to ULS.  Unlike outside counsel, Mr. Bauer is also uniquely capable of ensuring that ULS takes positions and makes arguments in this matter that do not conflict with positions that ULS has taken in other matters and are otherwise consistent with ULS' overall interests.  The need for Mr. Bauer's experience is further exemplified by the accelerated nature of bid protest litigation and the voluminous Record here, which amounts to tens of thousands of pages of detailed information.  The admission of Mr. Bauer to the Protective Order would lend to ULS' outside counsel critical insight on the key provisions of the Record and other protected materials.

 Citing support for its argument that ULS has no need for Mr. Bauer to be admitted to the Protective Order, SpaceX lists only a single, dated GAO case that is clearly irrelevant to the present circumstances.  In that case, inside counsel requested access to protected information merely so he could "generally . . . manage . . . outside counsel and otherwise 'contribute' in an unspecific matter during the protest." *McDonnell Douglas Corp.*, B-259694.2, B-259694.3, June 16, 1995, 95-2 CPD ¶ 51.  The GAO, in a decision not binding on this Court, found this purported justification insufficient to warrant access to protected information.  *Id.*  However, Mr. Bauer is not merely managing outside counsel generally or contributing in an unspecified matter, but, as noted herein, will be assisting outside counsel on key allegations of critical import to ULS, and about which he has specific knowledge and experience, plainly apparent from the work detailed in the Supplemental Statement.  Given the significance and complexity of this Air Force

program, the nature and specificity of the allegations against ULS, and in light of Mr. Bauer's

unique background and experience, his addition to the legal team admitted under the Protective

Order is simply critical.

3.     **The Addition of a Single Inside Attorney from ULS Is Reasonable Based on the Significance, Value, and Complexity of this Award and Protest**

Under the third factor relating to "the overall number of applications received," the number

of attorneys admitted to the Protective Order and ULS' request to admit Mr. Bauer are both

reasonable and proportionate, given that this matter involves the award of cost-sharing OT

agreements to ULS, Orbital, and Blue Origin, LLC worth more than $2 billion.  (*See* Redacted

Compl. ECF No. 14 at ¶ 67.)   As SpaceX notes, the ULS OT agreement alone amounted to

approximately $1 billion, *id.*, and this matter is thus clearly of utmost importance to ULS given

the ongoing development of its Vulcan launch vehicle.

The number of attorneys that ULS proposes to admit in this proceeding is reasonable and

within the same range as the litigation teams from the other parties.  Indeed, SpaceX's only

assertion on this factor is a single sentence stating merely "the overall number of Protective Order

admissions issued in this case has already reached twenty-two lawyers, not including Mr. Bauer,

five [sic] of whom represent ULS," without any legal support or argument.  (ECF No. 58 at 4.)

Presently (and not uncommonly), there are six admitted attorneys on the legal team representing

ULS.  Even if Mr. Bauer is admitted, ULS will have one fewer than the eight attorneys already

admitted to the Protective Order on behalf of Orbital, which is represented by six outside counsel

and two inside counsel.  (*See* ECF Nos. 19-23; 40; 41; and 52.)  SpaceX is itself represented by

five outside counsel (*see* ECF Nos. 34-38), which underscores the significance and value of this

matter.  The magnitude of the Administrative Record, alone, justifies the size of the present (and

proposed) legal teams to be admitted under the Protective Order, and the admission of one more

attorney to the Protective Order will neither delay nor complicate resolution of this protest, which weighs in favor of granting Mr. Bauer's application on this factor.  *See, e.g.*, *WellPoint Military Care Corp.,* B-415222.5, B-415222.8, May 2, 2019, 2019 CPD ¶ 168 (GAO overruling an objection to adding two inside counsel to a nine-attorney team under a protective order).

      **4.**      **SpaceX Presents No Legitimate Basis to Conclude that Mr. Bauer's Admission to the Protective Order Creates Unacceptable Risks of the Inadvertent Disclosure of Protected Information**

SpaceX presents no viable grounds under the fourth criteria, which requires consideration of "any other concerns that may affect the risk of inadvertent disclosure," for denying Mr. Bauer's admission under the multi-factor test governing admission.  Although SpaceX speaks conclusively of an alleged "material risk of inadvertent disclosure," its central concern seems premised on its own narrow interpretation of the governing rules, which it wrongly suggests is an established standard.  Specifically, SpaceX theorizes that any past involvement of inside counsel in any competitive decision-making creates a blanket prohibition to a later admission to a Protective Order at the Court.  However, there is no statute, regulation, rule, or precedent that imposes such a narrow and severe prohibition – which presumably explains why none of the citations offered by SpaceX actually reflect one.  What is clear, instead, is that admission under a Protective Order is to be adjudicated on a case-by-case basis with reference to the potential risks of *future* disclosures of protected information that could lead to a competitive advantage.  This is why there is no certification in the Court's required Form 9 application that requires counsel to attest to the absence of any *past* competitive activity.

In essence, SpaceX is premising its objection on an asserted legal requirement that does not exist, nor should it as a matter of policy.  SpaceX offers no viable rationale for prohibiting a legal department from narrowing one of its lawyer's job responsibilities to allow an inside

attorney to properly serve in a litigation management role going forward.  And SpaceX has not even attempted to articulate how any *past* legal involvement in competitive decision-making by inside counsel would raise the risk of *future* improper disclosure.  As an example, it is not remotely apparent how an attorney's legal review of a proposal in the past would lead to increased risk of the improper disclosure of protected information when counsel is later admitted to a protective order and has disengaged from any competitive decision-making under the standards of *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984).  Moreover, the practical implication of the SpaceX proposed rule would create a situation in which only the country's largest contractors, with large legal departments and designated-from-the-inception litigation management roles, would be afforded the opportunity to be represented by inside counsel in a bid protest proceeding.  There is no precedent for this narrow interpretation of the existing guidelines, nor are there any legitimate grounds for this Court to accept SpaceX's implicit offer to create one.  The multi-factor test controlling access to the Protective Order is, in short, *forward-looking*, not retrospective, and the Application certification requires counsel to certify that they "[are] not involved in" and "do not provide advice or participate in" competitive decision-making.  Mr. Bauer so certified here without any amendment or alteration.

SpaceX wrongly alleges that, "when restating the competitive decisionmaking certification from the base application, Mr. Bauer's supplemental statement repeatedly changes the required certification," *e.g.*, the Application provides, "I am not involved in competitive decisionmaking," while the Supplemental Statement provides, "I am not now and will not in the future be involved in competitive decision-making . . . ."  (ECF No. 58 at 5.)  Mr. Bauer executed the required Application without any change whatsoever, and his Supplemental Statement amplified and clarified his experience, current role, and future intentions.  The Supplemental

– 13 –

Statement actually commits Mr. Bauer to do *more* in the future than he is required to do by the Application itself.  In this regard, the facts here can be fully distinguished from *Zeidman Technologies, Inc. v. United States*, cited by SpaceX in support of its baseless assertion.  The application in that case pertained to a proposed expert, as opposed to inside counsel.  *See* 136 Fed. Cl. 50, 53 (2018).  More importantly, that applicant *deleted* the *U.S. Steel* representations in full, *see id.*, while Mr. Bauer supplemented them here.

SpaceX also points to the representation made in Mr. Bauer's Supplemental Statement in which he states that he "will not attend proposal development meetings and will not review proposals or proposal-related materials, including any participation in activities related to the ongoing Phase 2 of the National Security Space Launch program competition, Solicitation Number FA8811-19-R-0002, except as may be needed to carry out litigation-related responsibilities." (ECF No. 58 at 5 (citing ECF No. 55 at 5, ¶ (e)).)  SpaceX asserts that "[i]t is not clear what litigation-related responsibilities would require Mr. Bauer to attend proposal development meetings."  (ECF No. 58 at 5.)  These responsibilities could include, for example, limited discussions related to pre-proposal bid protests on future procurements.[1]  Mr. Bauer has expressly represented that he "does not now and will not in the future provide advice or participate in decisions about . . . product design or competitive structuring and composition of bid, offers, or proposals with respect to which the use of protected information could provide a competitive advantage."  Contrary to SpaceX's suggestion, then, there is no additional risk of inadvertent disclosure, because Mr. Bauer is prohibited by the terms of the Protective Order from disclosing Protected Information.

---

[1] To the extent that the Court deems this particular activity (and representation) as problematic, ULS would be amenable for Mr. Bauer to further narrow his representations to preclude attendance at any such meetings as part of his litigation-related responsibilities (or otherwise).

SpaceX's concern about Mr. Bauer reporting to a "competitive decisionmaker," Mr. Tshudy, General Counsel and Vice President of ULA, is similarly misplaced. (ECF No. 58 at 5.) In short, SpaceX does not – and cannot – allege that Mr. Bauer's reporting to Mr. Tshudy alone makes him ineligible for admission to the Protective Order.  *See, e.g., Robbins-Gioia, Inc.*, B-274318, *et al*., Dec. 4, 1996, 96 CPD ¶ 222 (citing *Mastushita Elec. Indus. Co. v. United States*, 929 F.2d 1577 (Fed. Cir. 1991)) (admitting inside counsel under protective order and noting that "[r]egular contact with corporate policy-making or competitive decision-making officials does not establish that an in-house counsel advises or participates in competitive decision-making"). Significantly, SpaceX did not object to the admission of Ms. Del Duca to this Protective Order, notwithstanding the fact that she reports directly to the General Counsel of Northrop Grumman (Orbital's parent entity), a corporate officer who is presumably involved in competitive decision-making activities.  Moreover, and as noted above, Mr. Bauer is physically separated from Mr. Tshudy, who is based at corporate headquarters in Colorado, rather than Mr. Bauer's small office in Virginia.

Finally, SpaceX asserts that "it is difficult to conceive how ULA could possibly tailor Mr. Bauer's future role in a way that shields him from work that will implicate the competitively valuable information he would learn from the record in this case." (ECF No. 58 at 6.)  As noted above, ULA has limited Mr. Bauer's work to legal counselling and support for functions not involved in competitive decision-making activities, such as "human resources; ethics; risk management; real estate, facilities, and property; tax; safety, health, and environmental affairs; information management; data protection; global trade; and litigation management." (ECF No. 55 at 4, ¶ (a).)  Any risk of inadvertent disclosure necessarily is limited by his work for these functions. In addition, the facts here are fully distinguishable from those in the cases cited by SpaceX, where

counsel's corporate responsibilities *continued to include competitive decision-making activities*. *See, e.g.*, *McDonnell Douglas Corp.*, *supra* (denying admission to a protective order where inside counsel confirmed that he would provide legal advice in connection with competitive decision-making); *Atl. Research Corp.*, B-247650, June 26, 1992, 92-1 CPD ¶ 543 (same).  These cases are plainly inapplicable here, where Mr. Bauer has represented that he will not engage in such activities, as demonstrated by the functions that he supports.[2]

### Conclusion

Because the application of the four-factor standard governing admission of counsel to the Protective Order provides substantial justification for the approval of the pending application of ULS Associate General Counsel Ralph A. Bauer, ULS respectfully requests that the Court **GRANT** his application for access to information under the Protective Order, ECF No. 55.

Dated:  July 2, 2019

*Of Counsel:*

Benjamin L. Hatch
Edwin O. Childs Jr.
Nathan R. Pittman
Karlee S. Blank
Blake R. Christopher
MCGUIREWOODS LLP
2001 K Street, NW, Suite 400
Washington, DC 20006

Respectfully submitted,

/s/ Todd R. Steggerda
Todd R. Steggerda
MCGUIREWOODS LLP
2001 K Street, NW, Suite 400
Washington, DC 2006
Telephone: 202-857-2477
Facsimile:  202-828-2968
tsteggerda@mcguirewoods.com
*Attorney of Record for United Launch Services, LLC*

---

[2] The other cases cited by SpaceX on this factor are similarly of no import.  *See Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 239 (2013) (denying request to issue a protective order for a non-attorney in a patent case where the non-attorney's consulting business was built around the patents at issue in the litigation); *Ross-Hime Designs, Inc. v. United States*, 109 Fed. Cl. 724, 743 (2013) (denying request to amend a protective order for a non-attorney inventor, small business owner, and owner of several patents under a different standard applicable to non-attorneys in patent cases (*Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505 (1996)); *Fairholme Funds, Inc. v. United States*, 118 Fed. Cl. 795 (2014) (denying admission as an expert to a former executive in a takings case using a different standard (*Levine v. United States*, 226 Ct. Cl. 701 (1981)) and based largely upon the former executive's demonstrated history of improperly disclosing protected materials to the media).

– 16 –

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2019, pursuant to RCFC 5, 5.3, and Appendix E, ¶ 12, I have filed United Launch Services, LLC's Response to Space Exploration Technologies Corporation's Objection to Inside Counsel's Application for Access to Information Under Protective Order via the Court's electronic case filing system, which automatically serves the document on all parties.

Dated:  July 2, 2019                              Respectfully submitted,

                                                 <u>/s/ Todd R. Steggerda</u>
                                                 Todd R. Steggerda

                                                 MCGUIREWOODS LLP
                                                 2001 K Street, NW
                                                 Suite 400
                                                 Washington, DC 2006
                                                 Telephone: 202-857-2477
                                                 Facsimile:   202-828-2968
                                                 tsteggerda@mcguirewoods.com
                                                 *Counsel of Record for United Launch Services, LLC*