No. 19-742C
(Judge Griggsby)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SPACE EXPLORATION TECHNOLOGIES CORP.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

UNITED LAUNCH SERVICES, LLC, BLUE ORIGIN, LLC, & ORBITAL SCIENCES CORP.,

Defendant-Intervenors.

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

JOSEPH H. HUNT
Assistant Attorney General

OF COUNSEL:

ERIKA WHELAN RETTA
Air Force Legal Operations Agency
Commercial Law and Litigation Directorate
AFLOA/JAQC
Contract and Fiscal Law Division

GREGORY YOKAS
Space and Missile Systems Center
Office of the Staff Judge Advocate

DOUGLAS EDELSCHICK
Trial Attorney
Department of Justice

July 9, 2019

ROBERT E. KIRSCHMAN, JR.
Director

DOUGLAS K. MICKLE
Assistant Director

TANYA B. KOENIG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tele: (202) 305-7587
Tanya.B.Koenig@usdoj.gov

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

ARGUMENT .....................................................................................................................4

    I.    SpaceX Does Not Challenge Our Conclusion That OT Agreements
        Are Not Procurements And That, Pursuant to *Hymas*, This Court
        Lacks Jurisdiction Over Them.....................................................................................4

    II.    The Phrase "In Connection With" Does Not Apply To A Separate
        Solicitation .................................................................................................................6

        A.  Each Acquisition Under The EELV Program Stands Alone ............................6

        B.  SpaceX's Interpretation Of "In Connection With" Is Contrary
            To Precedent ..................................................................................................7

        C.  The LSA OT Awards Are Not "In Connection With" The Phase 2
            Procurement .................................................................................................11

    III.    SpaceX Does Not Allege Any Violation Of Any Procurement Statute.................16

    IV.    We Defer To The Court On SpaceX's Transfer Request .......................................20

CONCLUSION.................................................................................................................20

i

## TABLE OF AUTHORITIES

### Cases

*AgustaWestland N. Am., Inc. v. United States*,
   880 F.3d 1326 (Fed. Cir. 2018)..................................................................................... 8

*BayFirst Sols., LLC v. United States*,
   104 Fed. Cl. 493 (2012) .............................................................................................. 8

*Blade Strategies, LLC*,
   B-416752, 2018 CPD ¶ 327 (Comp. Gen. Sept. 24, 2018)......................................... 16

*Centech Grp., Inc. v. United States*,
   554 F.3d 1029 (Fed. Cir. 2009).................................................................................... 16

*Cleveland Assets, LLC v. United States*,
   883 F.3d 1378 (Fed. Cir. 2018).............................................................................. 3, 17

*CMS Contract Mgmt. Servs. v. United States*,
   745 F.3d 1379 (Fed. Cir. 2014).................................................................................... 5

*Distributed Sols., Inc. v. United States*,
   539 F.3d 1340 (Fed. Cir. 2008).......................................................................... 3, 8, 17

*Electro–Voice, Inc.*,
   B–278319 et al., 98–1 CPD ¶ 23 (Comp. Gen. Jan. 15, 1998) ................................... 9

*Emery Worldwide Airlines, Inc. v. United States*,
   264 F.3d 1071 (Fed. Cir. 2001)........................................................................... 3, 17, 18

*Exploration Partners*, LLC,
   B-298804, 2006 CPD ¶ 201 (Comp. Gen. Dec. 19, 2006) ....................................... 16

*Geiler/Schrudde & Zimmerman v. United States*,
   743 F. App'x 974 (Fed. Cir. 2018) ......................................................................... 3, 10

*Griffy's Landscape Maint. LLC, v. United States*,
   51 Fed. Cl. 667 (2001) ........................................................................................... 7, 14

*Guardian Moving & Storage Co. v. United States*,
   122 Fed. Cl. 117 (2015) ......................................................................................... 7, 14

*Hymas v. United States*,
   810 F.3d 1312 (Fed. Cir. 2016).......................................................................... 2, 4, 5

*Int'l Genomics Consortium v. United States,*
  104 Fed. Cl. 669 (2012) ............................................................................................ 7

*Itility, LLC v. United States,*
  124 Fed. Cl. 452 (2015) ............................................................................................ 8

*Kellogg Brown & Root Servs. v. United States,*
  117 Fed. Cl. 764 (2014) ............................................................................................ 8

*Labat-Anderson, Inc. v. United States,*
  50 Fed. Cl. 99 (2005) ............................................................................................ 10

*MD Helicopters, Inc.,*
  B-417379, 2019 CPD ¶ 120 (Comp. Gen. Apr. 4, 2019)............................... 15, 16

*MorphoTrust USA, LLC,*
  B-412711, 2016 CPD ¶ 133 (Comp. Gen. May 16, 2016) ..................................... 16

*OTI Am., Inc. v. United States,*
  68 Fed. Cl. 108 (2005) .............................................................................................. 9

*R&D Dynamics Corp. v. United States,*
  80 Fed. Cl. 715 (2007) ..................................................................................... 11, 13

*RAMCOR Servs. Grp. v. United States,*
  185 F.3d 1286 (Fed. Cir. 1999)............................................................... 3, 9, 17, 19

*Renic Corp., B-248100,*
  92-2 CPD ¶ 60 (Comp. Gen. July 29, 1992)................................................... 7, 14

*Resource Conservation Grp., LLC v. United States,*
  597 F.3d 1238 (Fed. Cir. 2010)............................................................. 4, 8, 15, 17

*SDS Int'l v. United States,*
  48 Fed. Cl. 759 (2001) ........................................................................................ 6, 14

*Systems Application & Techs., Inc. v United States,*
  691 F.3d 1374 (Fed. Cir. 2012)......................................................................... 3, 6, 8

*Team Waste Gulf Coast, LLC v. United States,*
  135 Fed. Cl. 683 (2018) ..................................................................................... 3, 10

*VFA, Inc. v. United States,*
  118 Fed. Cl. 735 (2014) ............................................................................................ 8

*White Hawk Grp., Inc. v. United States,*
  91 Fed. Cl. 669 (2010) ............................................................. 3, 10

### Statutes

10 U.S.C. § 2371(a) ...................................................................... 5

10 U.S.C. § 2371b ................................................................. passim

28 U.S.C. § 1491(b) .............................................................. passim

31 U.S.C. § 3553(c)(2) .............................................................. 17, 19

31 U.S.C. § 6303 .......................................................................... 2

41 U.S.C. § 111 .......................................................................... 13

41 U.S.C. § 3301 ......................................................................... 2

### Regulations

32 C.F.R. § 3.2 ............................................................................ 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

|  |  |  |
|---|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **FILED UNDER SEAL** |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | No. 19-742C (Judge Griggsby) |
| and | ) ) | |
| UNITED LAUNCH SERVICES, LLC, BLUE ORIGIN, LLC, & ORBITAL SCIENCES CORP., | ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The response brief filed by plaintiff, Space Exploration Technologies Corp. (SpaceX), fails to establish that this Court possesses jurisdiction to entertain its complaint. The Other Transaction (OT) launch service agreements (LSAs) awarded by the United States Air Force Space and Missile Systems Center (Air Force or agency) are non-procurement agreements issued pursuant to the Air Force's authority under 10 U.S.C. § 2371b, which are excluded from the Court's jurisdiction under 28 U.S.C. § 1491(b).

SpaceX misstates the premise of our argument; we do not ask the Court to grant an exception to its jurisdiction over alleged violations of procurement law if an OT agreement is involved. Rather, we simply ask the Court to apply its jurisdictional statute to find that SpaceX

cannot challenge the award of a non-procurement OT agreement. *See generally* ECF No. 51, Motion to Dismiss (MTD).

SpaceX contends that it is "largely immaterial" that the award it challenges is an OT agreement. ECF No. 59, SpaceX Response Brief (Resp. Br.) at 6. On the contrary, it is crucial to the question before the Court. In authorizing the Department of Defense (DOD) to enter into "transactions (other than contracts, cooperative agreements, and grants)," 10 U.S.C. § 2371b, Congress expressly distinguished OTs from other procurement contracts, and removed them from the coverage of the Federal Grant and Cooperative Agreement Act (FGCAA), 31 U.S.C. § 6303 and the Competition in Contracting Act (CICA), 41 U.S.C. § 3301. In addition, because the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that this Court does not possess bid protest jurisdiction to entertain challenges to transactions that are not procurements under the FGCAA, OTs are excluded from the jurisdiction of this Court under 28 U.S.C. § 1491(b)(1). *Hymas v. United States*, 810 F.3d 1312, 1329-30 (Fed. Cir. 2016). SpaceX admittedly "does not question the Agency's authority to use an OT nor does SpaceX assert that the Agency should have used another procurement vehicle." Resp. Br. at 5. Thus, a straightforward application of this Court's jurisdiction under § 1491(b) requires the Court to dismiss the protest filed by SpaceX.

SpaceX attempts to avoid the straightforward jurisdictional application by contending that, under the third prong of § 1491(b), it may challenge the award of an OT agreement because it is "in connection with" the later, Phase 2 procurement. However, the statute requires that the "alleged violation of statute or regulation" be "in connection with a procurement or a proposed procurement." But SpaceX *does not challenge* the Phase 2 procurement. SpaceX challenges only the non-procurement OT agreement, yet asks this Court to conclude that, because both

solicitations occur as part of the same overarching Evolved Expendable Launch Vehicle (EELV) program, this Court should take jurisdiction over SpaceX's challenge to the award of the non-procurement OT agreements. SpaceX's position seeks to expand this court's jurisdiction in a manner that is contrary to precedent and Congressional intent and therefore should be rejected.

SpaceX wrongly suggests that the OT award is merely one step in the procurement process when it is in fact an entirely separate solicitation. Resp. Br. at 2. Thus, what SpaceX seeks to do in this case is fundamentally different from the facts in the cases on which it relies. A separate, non-procurement transaction is not akin to a request for information (*Distributed Sols., Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008)), a corrective action decision (*Sys. Application & Techs., Inc. v United States*, 691 F.3d 1374 (Fed. Cir. 2012)), a CICA stay override (*RAMCOR Servs. Grp. v. United States*, 185 F.3d 1286 (Fed. Cir. 1999)), or Small Business Administration (SBA) small business determinations (*Team Waste Gulf Coast, LLC v. United States*, 135 Fed. Cl. 683, 686-87 (2018); *White Hawk Grp., Inc. v. United States*, 91 Fed. Cl. 669, 679 (2010); *Geiler/Schrudde & Zimmerman v. United States*, 743 F. App'x 974, 976-79 (Fed. Cir. 2018)), the protestors in which all ultimately challenged a procurement. The courts in those cases did not address whether a statute governing a non-procurement agreement could be deemed "in connection with" a separate procurement or proposed procurement that addresses the same or similar subject matter as the non-procurement.

Moreover, SpaceX has not alleged that the Air Force has violated a procurement statute or regulation, as required by the Federal Circuit. *See Cleveland Assets, LLC v. United States*, 883 F.3d 1378 (Fed. Cir. 2018). Specifically, the statutes that SpaceX alleges were violated are not procurement statutes. Neither *RAMCOR* nor *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071 (Fed. Cir. 2001), supports SpaceX's contention that a violation of the

Administrative Procedures Act (APA) vests this Court with jurisdiction in light of *Cleveland Assets*. Moreover, SpaceX is incorrect that the statute granting authority to the Air Force to issue non-procurement OT agreements, 10 U.S.C. § 2371b, is a procurement statute.

This case involves a challenge to an award of a non-procurement action based upon purported violations of non-procurement statutes. SpaceX's argument that its challenge is "in connection with" a procurement is without merit. Thus, SpaceX's complaint must be dismissed.

ARGUMENT

I.   SpaceX Does Not Challenge Our Conclusion That OT Agreements Are Not Procurements And That, Pursuant to *Hymas*, This Court Lacks Jurisdiction Over Them

As we established in our motion to dismiss, OT agreements, expressly defined as non-procurements, fall outside of this Court's 28 U.S.C. § 1491(b) jurisdiction.[1] In its response, SpaceX does not challenge this fact, instead merely contending that it is not necessary for "the Court to declare as a matter of law that all OT awards fall within section 1491(b)(1)." Resp. Br. at 30-31. But because the action that SpaceX challenges is the non-procurement OT agreement, the Court lacks jurisdiction over its claims.

As we stated in our motion to dismiss, bid protest jurisdiction pursuant to section "1491(b)(1) in its entirety is exclusively concerned with *procurement* solicitations and contracts." *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) (emphasis added); *accord Hymas*, 810 F.3d at 1317, 1324. The Federal Circuit held in *Hymas* that, when an agency exercises its statutory authority to use a non-procurement instrument, and the FGCAA does not require the use of a procurement contract, the Court does not possess

---

[1] Indeed, SpaceX would not need to rely on the third prong of the Court's jurisdiction under § 1491(b) to allege that its challenge is "in connection with" a procurement if it believed that the OT itself was a procurement over which the Court possesses jurisdiction.

4

§1491(b) jurisdiction to review the non-procurement action. *Id.* at 1324-30; *see also CMS Contract Mgmt. Servs. v. United States*, 745 F.3d 1379, 1381 (Fed. Cir. 2014) ("agencies escape the requirements of federal procurement law" when using a non-procurement action). The principles in *Hymas* lead to a straightforward conclusion that the Court does not possess bid protest jurisdiction to entertain challenges to OTs that are not procurement contacts.[2]

Other transactions are *not* procurement contracts, cooperative agreements, or grants. *See, e.g.*, 10 U.S.C. § 2371(a); (authorizing "transactions (other than contracts, cooperative agreements, and grants")); 10 U.S.C. § 2371b(d)(1) (authorizing "a transaction (other than a contract, grant, or cooperative agreement) for a prototype project"). As explained in 10 U.S.C. § 2371b, and as relevant here, OT agreements (as used by the DOD) are "prototype projects that are directly relevant to enhancing the mission effectiveness of military personnel and the supporting platforms, systems, components, or materials proposed to be acquired or developed by the Department of Defense, or to improvement of platforms, systems, components, or materials in use by the armed forces." 10 U.S.C. § 2371b(a). These "[o]ther transactions" are "generally not subject to the Federal laws and regulations limited in applicability to contracts, grants or cooperative agreements" and "are not required to comply with the Federal Acquisition Regulation (FAR) and its supplements (48 CFR)." 32 C.F.R. § 3.2.

OTs are intended "to give D[O]D the flexibility necessary to adopt and incorporate business practices that reflect commercial industry standards and best practices into its award

---

[2] SpaceX misreads our brief to the extent it suggests that we cited *Hymas* as though it addressed the third prong of the Court's jurisdiction under § 1491(b). *See* Resp. Br. at 26. Our discussion of *Hymas* occurs exclusively in Section II of our motion to dismiss titled "The Court Does Not Possess Bid Protest Jurisdiction To Entertain Challenges To Non-Procurement Actions." *See* MTD at 20-24. We do not cite or discuss *Hymas* in Section III of our motion, titled "SpaceX's Complaint Is Not 'In Connection' With A Procurement Or Proposed Procurement." *See id.* at 24-32.

instruments."  Department of Defense Other Transactions Guide (OT Guide) at 4.  OTs may allow DOD to "[l]everage commercial industry investment in technology development and partner with industry to ensure D[O]D requirements are incorporated into future technologies and products."  OT Guide at 5.

Because OTs are specifically defined as non-procurement transactions, and because, pursuant to *Hymas*, this Court lacks jurisdiction over protest challenges non-procurement actions, the Court should apply *Hymas* and hold that the Court does not possess bid protest jurisdiction to entertain SpaceX's complaint.

II.     The Phrase "In Connection With" Does Not Apply To A Separate Solicitation

On its face, this Court's bid protest jurisdictional statute "grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement" *Sys. Application & Techs.*, 691 F.3d at 1380-81; *see also* 28 U.S.C. § 1491(b)(1).  Here, SpaceX does not even allege that it challenges a procurement.  Rather, SpaceX relies on the follow-on Phase 2 procurement *solely* as a purported jurisdictional hook to challenge the non-procurement OT award by alleging that the OT agreements are "in connection with" the Phase 2 procurement.  SpaceX's allegation that the phrase "in connection with" should be interpreted in this way is contrary to this Court's and the Federal Circuit's precedent and leads to unintended and absurd results.

A.     Each Acquisition Under The EELV Program Stands Alone

As we established in our motion to dismiss, it is a tenet of procurement law that "[e]ach procurement stands alone, and a selection decision made under another procurement does not govern the selection under a different procurement." *SDS Int'l v. United States*, 48 Fed. Cl. 759,

772 (2001) (quoting *Renic Corp.*, B-248100, 92-2 CPD ¶ 60 (Comp. Gen. July 29, 1992));

*Griffy's Landscape Maint. LLC, v. United States*, 51 Fed. Cl. 667, 671 (2001) ("[A]n attack upon

a new solicitation or upon any other aspect of the administration of the previous contract, must

stand on its own.").

Thus, had the Air Force structured the OT agreements as procurement contracts, any

alleged statutory or regulatory violations with respect to that procurement could not be deemed

"in connection with" the subsequent Phase 2 procurement. *See Guardian Moving & Storage Co.

v. United States*, 122 Fed. Cl. 117, 131-32 (2015) (rejecting a protester's argument that the

agency's determination was arbitrary and capricious because it had allegedly found the same

kind of documentation acceptable to meet a similar requirement in a prior procurement, and

explaining that "an agency is not bound by its actions in a previous procurement"). If a prior

procurement cannot be deemed "in connection with" a present procurement, then there is no

basis for treating a prior *non-procurement* differently, particularly given that Congress has

explicitly excluded such non-procurements from this Court's jurisdiction.

     B.     SpaceX's Interpretation Of "In Connection With" Is Contrary To Precedent

SpaceX maintains that the third prong of 28 U.S.C. § 1491(b), which states that the Court

possesses jurisdiction to entertain "any alleged violation of statute or regulation in connection

with a procurement or a proposed procurement," must be read broadly pursuant to *Distributed

Solutions* and *RAMCOR*. But neither of those cases, nor any of the other cases on which SpaceX

relies, support a reading as broad as SpaceX proposes. *See Int'l Genomics Consortium v. United

States*, 104 Fed. Cl. 669, 676 (2012) (cautioning that adopting an overbroad reading of

*Distributed Solutions* would "unlock a veritable Pandora's box of bid protest challenges to many

internal agency decisions that never ripen into procurements"). As the Federal Circuit has

described it, "*once a party objects to a procurement*, section 1491(b)(1) provides a broad grant of jurisdiction." *Sys. Application & Techs.*, 691 F.3d at 1381 (emphasis added) (quoting *Res. Conservation*, 597 F.3d at 1244 (emphasis omitted) (quoting 41 U.S.C. § 403(2))). But here, SpaceX does not object to the procurement at issue (*i.e.*, the Phase 2 competition).

If read in the overly expansive fashion urged by SpaceX, *Distributed Solutions* could stand for the proposition that every single decision, from a requirements definition through contract administration, could be "in connection with" a procurement. However, *Distributed Solutions* and its progeny have recognized that § 1491(b) bid protest jurisdiction is far more limited in scope. *See*, *e.g.*, *Distributed Sols.*, 539 F.3d at 1346 ("adding work to an existing contract that is clearly within the scope of the contract does not raise a viable protest under § 1491(b)(1)"); *see also AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (finding that an order regarding the use of Army helicopters for training is not a decision "in connection with" a procurement, despite it ultimately resulting in a need to procure additional helicopters);[3] *Itility, LLC v. United States*, 124 Fed. Cl. 452, 458-59 (2015) (finding that past performance evaluations must be challenged as a Contract Disputes Act matter and do not come within the Court's bid protest jurisdiction); *VFA, Inc. v. United States*, 118 Fed. Cl. 735, 743 (2014); *Kellogg Brown & Root Servs. v. United States*, 117 Fed. Cl. 764, 768-70 (2014); *BayFirst Sols., LLC v. United States*, 104 Fed. Cl. 493, 507 (2012) (a cancellation

---

[3] SpaceX contends that *AgustaWestland* is distinguishable because, in that case, "the protester had not and could not 'demonstrate that the government at least initiated a procurement or initiated the process for determining a need for acquisition,'" whereas here there is a specific procurement involved. Resp. Br. at 22 n.10 (quoting *AgustaWestland*, 880 F.3d at 1330-31 (citing *Distributed Sols.*, 539 F.3d at 1346) (internal quotation omitted)). However, that the agency in *AgustaWestland* had later issued a procurement (by the time the issue reached the Court) was not fatal to the Court's correct determination that the execution order was not a procurement decision.

decision is not "in connection with" the task order award because "[t]he cancellation of the [s]olicitation may be viewed as a discrete procurement decision and one which would have been the subject of a separate protest.").

In its response brief, SpaceX cites several cases in support of its incorrect assertion that the phrase "in connection with" should apply to grant this Court jurisdiction to entertain its complaint. *See* Resp. Br. at 23-25. But none of the cases on which SpaceX relies hold that the Court possesses jurisdiction to entertain a challenge to a non-procurement on the basis of the phrase "in connection with" in the third prong of the Court's § 1491(b) jurisdiction.

For example, SpaceX contends that *RAMCOR* supports its argument that it need not make "*any objection to the actual contract procurement*." Resp. Br. at 17-18 (quoting *RAMCOR*, 185 F.3d at 1289) (emphasis in brief). However, in *RAMCOR* the protestor challenged one step in the procurement process (a CICA stay override), and the alleged violation of a procurement law in taking *that* action. Thus, *RAMCOR* is inapposite and does not support SpaceX's jurisdictional allegations.

In addition, in *OTI America, Inc. v. United States*, 68 Fed. Cl. 108 (2005), this Court considered whether it could hear a claim from a contractor who was eliminated from receiving further orders on a contract it had been awarded, and concluded it could. The Court did not consider the scope of the phrase "in connection with." In its decision, the Court in *OTI* relied on the Government Accountability Office's (GAO) decision in *Electro–Voice, Inc.*, B–278319 et al., 98–1 CPD ¶ 23 (Comp. Gen. Jan. 15, 1998). But in *Electro-Voice*, GAO considered whether it possessed jurisdiction over a "downselection (i.e., the selection of one of multiple contractors for continued performance)." Importantly, the downselection was made in relation to the *same* solicitation and contract. Thus, GAO considered whether FASA's bar on task order protests

barred the claim, and concluded it did not. GAO's determination that it possesses jurisdiction to review a downselection within one solicitation cannot be expanded to a conclusion that GAO, or the Court, may review a separate competition. As such, neither case is instructive in resolving the current jurisdictional matters before the Court.

And in *Labat-Anderson, Inc. v. United States*, 50 Fed. Cl. 99 (2001), the Court found jurisdiction over the award of a blanket purchase agreement (BPA). In *Labat-Anderson*, the Court found that the award of the BPA at issue in that case "is one of the 'stages' in the process of acquiring records management and forms processing services that occurred after the INS 'determined a need for . . . services,' the point at which the procurement process begins under the statutory definition." 50 Fed. Cl. at 104. The Court explained that the protester's "objection to the reasonableness of the INS's award of a BPA against an FSS contract pursuant to FAR [Part] 8 falls squarely within the jurisdictional ambit of § 1491(b)(1)." *Id.* Thus, the Court found that the alleged violation of a procurement regulation, *i.e.*, FAR Part 8, in the award of the BPA was "in connection with" a procurement. The parties in *Labat* did not argue that a BPA is not a procurement vehicle.

Finally, SpaceX further contends that SBA decision challenges support its jurisdictional argument. *See* Resp. Br. at 24-25 (citing *Team Waste Gulf Coast*, 135 Fed. Cl. at 686-87; *White Hawk*, 91 Fed. Cl. at 679; *Geiler/Schrudde & Zimmerman*, 743 F. App'x at 976-78). However, the cases cited by SpaceX simply find that SBA decisions may *only* be reviewed by this Court in the context of *one* specific procurement. None of these cases support a contention that the SBA decisions may be reviewed "in connection with" a subsequent procurement.

In each of the above cases, the protestor ultimately challenged a procurement. Thus, they are inapposite to SpaceX's allegations in this case. Rather, as we explained in our motion to

dismiss, *R&D Dynamics Corp. v. United States*, 80 Fed. Cl. 715, 716 (2007), forecloses SpaceX's argument here. There, the Court found that the non-procurement Phase II Small Business Innovation Research (SBIR) award was not in "connection with" the Phase III procurement. *Id.* at 722. SpaceX attempts to distinguish *R&D Dynamics* because, according to SpaceX, the question was "not whether the Court has jurisdiction over a flawed SBIR Phase II selection decision made 'in connection with a procurement or proposed procurement.'" Resp. Br. at 28 (quoting *R&D Dynamics*, 80 Fed. Cl. at 719-22). However, the Court in *R&D Dynamics* specifically considered whether the Phase II's relation to the later Phase III competition brought the challenge to the Phase II award within the jurisdiction of the Court, and concluded it did not. 80 Fed. Cl. at 722. The Court so concluded despite the fact that overall program "may ultimately lead to the development of a capacity to provide goods or services in Phase III."[4] *Id.*

Thus, "in connection with" has limits, and the Federal Circuit's and this Court's cases do not support SpaceX's use of the phrase to impermissibly stretch the limits of this provision to make the unprecedented decision to assert jurisdiction over a non-procurement action.

    C.    <u>The LSA OT Awards Are Not "In Connection With" The Phase 2 Procurement</u>

As we established in our motion to dismiss, SpaceX's alleged statutory violations are not in connection with the Phase 2 procurement. We acknowledge that the Phase 2 procurement is part of the same EELV program as the OT award. However, SpaceX seems to confuse overall EELV program goals with the goals of each individual procurement or non-procurement action,

---

[4] SpaceX also contends that *R&D Dynamics* wrongly concluded that the Phase II SBIR award was not a procurement. Resp. Br. at 27-28. However, because the takeaway from this case is that the later procurement did not apply to grant a jurisdictional connection to the earlier non-procurement, whether the Court was wrong to conclude that SBIR Phase II development contracts are procurements is not relevant to the issues in this case.

as reflected in separate and distinct solicitations. *See* Resp. Br. at 8-9. The overall goal of the EELV program is to "leverage the commercial market place in order to assure access to space (AATS) for NSS satellites, meet statutory requirements to transition off Russian-manufactured rocket engines, maintain program affordability, and create a sustainable competitive environment in the future." Tab 19, AR 786. The OT agreements seek to increase the pool of launch vehicles that meet the Air Force's needs by "investing in the development of prototypes for launch systems." Tab 19, AR 793. The goal of the Phase 2 procurement, on the other hand, is to procure, through requirements contract awards, actual "launch services delivering multiple National Security Space (NSS) missions with annual ordering periods from Fiscal Year (FY) 2020 through FY 2024." ECF No. 1-1 at 38 (Phase 2 RFP at 2).

The EELV program is not a single procurement, as SpaceX appears to contend. In fact, as shown below, it includes at least 8 separate solicitations over the course of 14 years.



Figure 1 - Overall EELV Strategy. Tab 19, AR 788.

The chart SpaceX includes in its response brief does not differ materially from Figure 1. Resp. Br. at 8. Both demonstrate that the EELV program includes several discrete steps. As shown in SpaceX's chart, the OT agreements for rocket propulsion systems are shown in purple, the OT agreements for launch service prototypes are shown in blue, and the Phase 2 procurement is in green. *Id.* Each step is accomplished by a separate solicitation.

SpaceX cites to the definition of "procurement" in 41 U.S.C. § 111, which states that it "includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." *See* Resp. Br. at 18-19. Applying this definition to the LSA OT agreements, as SpaceX urges, [5] the "need" that was identified was for investment into launch vehicle prototypes. The "contracts" that were awarded were the OT agreements, which are not procurement contracts. In contrast, for Phase 2, the "need" that has been identified is launch services. The "contract" that will be awarded are two requirements contracts. These two separate transactions are both executed under the larger EELV program, but they satisfy different requirements and are not a single acquisition. Indeed, there are two separate solicitations, two separate competitions, and two separate sets of agreements. The OTs were awarded as a result of a non-FAR-based competition, whereas the Phase 2 is a FAR-based competition. Tab 19, AR 807. And as the Court found in *R&D Dynamics Corp.*, a prototype agreement that is not in itself a procurement is not "in connection with" a later competitive procurement. 80 Fed. Cl. at 722 (quoting 28 U.S.C. § 1491(b)(1) (2001)).

---

[5] Although it is undisputed that the OT agreements are not procurement contracts, comparing the LSA OT acquisition process to the definition of "procurement" in § 111 is instructive.

Under SpaceX's theory, that there are multiple, separate acquisitions does not matter; instead, the entire EELV program should be considered a single procurement for purposes of this Court's jurisdiction.  This interpretation conflicts with a basic tenet of procurement law that "[e]ach procurement stands alone, and a selection decision made under another procurement does not govern the selection under a different procurement."  *SDS Int'l*, 48 Fed. Cl. at 772 (quoting *Renic Corp.*, 92-2 CPD ¶ 60); *see also Guardian Moving*, 122 Fed. Cl. at 132; *Griffy's Landscape*, 51 Fed. Cl. at 671.  SpaceX's argument, if adopted, would permit it to circumvent the procedures (and time limitations) to challenge each individual procurement conducted in Phases 1, 1A, 2, and 3, merely by alleging that putative violations of statutes or regulations in one phase were "in connection with" awards made under another phase, over a 14 year period.

SpaceX also contends that the two solicitations must be "in connection with" each other because three OT agreements were awarded and two launch services contracts are anticipated.  Resp. Br. at 11.  However, SpaceX's argument is belied by the fact that the Phase 2 competition is not limited to the awardees of the OT agreements.  Tab 19, AR 807 (noting that, "*[i]f any of the [Phase 2] awardees have LSAs, those LSA OT agreements would continue*") (emphasis added); Tab 19, AR 786 ("FAR-based procurement contracts will be competitively awarded to certified EELV launch service providers, which could include companies that were not previously awarded LSAs").  As SpaceX acknowledges, it is still eligible to compete in the Phase 2 competition.  *See, e.g.* Compl. ¶¶ 77, 87.  Nor is SpaceX bound in its Phase 2 proposal by what it bid in the OT competition.[6]

---

[6] SpaceX continues to allege that the Starship is simply a name change from the Big Falcon Rocket (BFR) that it proposed in the OT competition, but its argument is belied even by its own source. *See* BBC News, Elon Musk renames his BFR spacecraft Starship (Nov. 20, 2018), https://www.bbc.com/news/business-46274158 (noting that, "[o]ver the weekend, Mr Musk

As we established in our motion to dismiss, SpaceX's argument would make nearly *every* OT subject to this Court's bid protest jurisdiction, contrary to *Resource Conservation*. *Res. Conservation*, 597 F.3d at 1245. DOD programs that develop prototypes through the use of OTs, when successful, will nearly always lead to the subsequent acquisition of goods or services through another contracting vehicle, as use of the OT authority requires that the prototypes be "directly relevant to enhancing the mission effectiveness of military personnel and the supporting platforms, systems, components, or materials proposed to be acquired or developed by the Department of Defense." 10 U.S.C. § 2371b(a)(1). In fact, § 2371b(f) provides for follow-on production contracts or transactions in certain circumstances. Thus, Congress contemplated that prototypes may, and in many cases, would lead to production and that the Government would often enter into a sole-source procurement contract after completion of a non-procurement OT. Indeed, the Government would not spend time and money developing prototypes if it did not intend to acquire any related goods or services in the future.

In its response brief, SpaceX suggests that we are wrong to raise a concern that all OT agreements will come under the jurisdiction of this Court in violation of *Hymas* and § 1491(b). *See* Resp. Br. at 29-30. According to SpaceX, because this issue has not yet been decided by this Court, our concern is illegitimate. To the contrary, perhaps this issue has not been raised to this Court because, under its plain terms, § 1491(b) does not extend this Court's jurisdiction to protest challenges to non-procurement actions. Or perhaps it is because GAO has repeatedly made clear that OT agreements are not properly the subject of bid protest review.[7] *E.g., MD*

---

tweeted that the spaceship was being *redesigned*, saying the new version was 'very exciting. Delightfully counter-intuitive.'") (emphasis added).

[7] GAO has found that, with respect to an OT agreement, it possesses limited jurisdiction to review "a timely pre-award protest that an agency is improperly using its other transaction

*Helicopters, Inc.*, B-417379, 2019 CPD ¶ 120 (Comp. Gen. Apr. 4, 2019); *MorphoTrust USA, LLC*, B-412711, 2016 CPD ¶ 133 (Comp. Gen. May 16, 2016); *Expl. Partners*, LLC, B-298804, 2006 CPD ¶ 201 (Comp. Gen. Dec. 19, 2006). And although GAO opinions are not binding on this Court, they may be "instructive in the area of bid protests." *See Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 n.4 (Fed. Cir. 2009).

Congress has expressly excluded OTs from the definition of procurement contracts. Every cooperative agreement research project, OT, and similar transactions would be protestable under SpaceX's theory simply because the Government conducts these activities as part of larger acquisition programs and ultimately intends – consistent with statutory requirements – that the prototypes it develops through non-procurement transactions are successful and will result in a product that it may procure in the future. This absurd result is contrary to the express will of Congress as stated in § 1491(b).

SpaceX's jurisdictional theory is inconsistent with controlling precedent and the statutory scheme for OT non-procurements, and it should be rejected.

III.     Spacex Does Not Allege Any Violation Of Any Procurement Statute

SpaceX contends in its response that it need not allege a violation of a procurement statute, or, alternatively, that 10 U.S.C. § 2371b is a procurement statute.[8] SpaceX is incorrect on both assertions.

SpaceX ignores the holding in *Cleveland Assets* that the "statute or regulation" alleged to have been violated must be a *procurement* statute or regulation. As stated by the Court, "[t]he

___

authority to procure goods or services." *MD Helicopters, Inc.*, B-417379, 2019 CPD ¶ 120 (Comp. Gen. Apr. 4, 2019) (citing 4 C.F.R. § 21.5(m); *Blade Strategies, LLC*, B-416752, 2018 CPD ¶ 327 at 2 (Comp. Gen. Sept. 24, 2018)). SpaceX has not made such allegations here.

[8] SpaceX does not contest that the fact that the APA is not a procurement statute.

phrase 'procurement' therefore limits the types of government action that the Claims Court has jurisdiction to review under § 1491(b)." 883 F.3d at 1381 (citing *Distributed Sols.*, 539 F.3d at 1346; *see also Res. Conservation*, 597 F.3d at 1245 ("[R]elief under 1491(b)(1) is unavailable outside the procurement context.")). The Court explained that, "[i]f plaintiffs could allege any statutory or regulatory violation tangentially related to a government procurement, § 1491(b)(1) jurisdiction risks expanding far beyond the procurement context." 883 F.3d at 1381. Thus, in "declin[ing] to read out the meaning of 'procurement' from the text of § 1491(b)(1) regarding the statutes and regulations that an interested party may challenge," the Federal Circuit found that this Court lacked jurisdiction over an alleged violation of a non-procurement statute. *Id.*

Neither *RAMCOR* nor *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071 (Fed. Cir. 2001), supports SpaceX's contention that violations of the APA vest this Court with jurisdiction in light of *Cleveland Assets*.

The decision in *RAMCOR* does not support SpaceX's contention that a violation of the APA alone is sufficient to provide this Court with jurisdiction. The holding in *RAMCOR* is consistent with the holding in *Cleveland Assets*. Importantly, it is incontrovertible that the statute "in connection with a procurement" at issue in *RAMCOR* was 31 U.S.C. § 3553(c)(2) concerning CICA stay overrides. *See id.* at 1289 ("This issue, in turn, requires this court to determine whether § 3553(c)(2) is a statute 'in connection with a procurement,' as required by § 1491(b)(1)."). The Court in *RAMCOR* simply used the APA to provide the standard of review, as instructed by § 1491(b)(4). As the Court stated, "[t]he ADRA explicitly imports the APA standards of review into the Court of Federal Claims' review of agency decisions. . . . Section 1491(b)(4) thus provides the substantive requirements that § 3553(c)(2) lacks." *Id.* at 1290.

Nowhere did the *RAMCOR* Court find that an alleged violation of the APA alone is sufficient to provide this Court with jurisdiction.

Neither does the decision in *Emery Worldwide* support SpaceX's contention that an alleged violation of the APA provides this Court jurisdiction. The jurisdictional question before the Court in *Emery Worldwide* was whether the United States Postal Service (USPS) was subject to the same bid protest jurisdiction as other Federal agencies. *Emery Worldwide*, 264 F.3d at 1075 (USPS moving to dismiss the case for lack of jurisdiction because "the USPS is not a 'federal agency' for purposes of the Tucker Act" and because "the action could not be brought against the USPS in its own name"). But in any event, it was the first two prongs of the Court's § 1491(b) jurisdiction at issue, not the third prong. *See id.* at 1083 ("The ADRA clearly states that the Court of Federal Claims has jurisdiction over 'federal agenc[ies]' with respect to a 'proposed award or the award of a contract.'"). Thus, *Emery Worldwide* has absolutely no bearing on the questions presented in this case.

Alternatively, SpaceX contends that 10 U.S.C. § 2371b is a procurement statute. SpaceX's contention fails. This statute – as thoroughly established in our motion to dismiss – concerns non-procurement actions. SpaceX cites to various portions of the statute that it alleges demonstrate that § 2371b is a procurement statute. Resp. Br. at 33-34. However, none of the references to the word "procurement" or competitive procedures in § 2371b establish that it is a procurement statute. First, the mere reference in 10 U.S.C. § 2371b(a)(2)(A) to individuals that have authority to act under the statute by position title does not create a procurement statute. *See* Resp. Br. at 34 (requiring that, in some circumstances, a "senior procurement executive" authorize the action). There is no support for any argument that Congress intended anything other than to identify individuals of authority without creating new positions or statute-specific

jargon. Second, the reference in 10 U.S.C. § 2371b(f)(5) to how procurement rules *may* apply to follow-on production efforts does not create a procurement statute; rather, those procedures are permissive, not mandatory. Third, the singular fact that non-procurement actions under the statute are "treated" as Federal agency procurements solely for purposes of applying procurement integrity requirements in 10 U.S.C. § 2371b(h) does not create a procurement statute. That OT agreements are "treated" as procurements solely for procurement integrity requirements reinforces that they are otherwise non-procurements. Finally, reference to the location of the statute in Title 10 United States Code is unpersuasive. Congress specifically established (as detailed in depth in our motion to dismiss) that Other Transactions authorized under this statute are non-procurement actions.

Additionally, in determining that a violation of 31 U.S.C. § 3553(c)(2) was "in connection with" a procurement proposal, the *RAMCOR* Court stated, the agency's "§ 3553(c)(2) override allowed it to procure immediately [the protestor's] services." 185 F.3d at 1289. The Court found that, "where an agency's actions under a statute so clearly affect the award and performance of a contract, this court has little difficulty concluding that that statute has a 'connection with a procurement.'" *Id.* Here, SpaceX asserts that any violation of 10 U.S.C. § 2371b is in connection with the Phase 2 procurement proposal. As stated in our motion to dismiss, the acquisition strategies for the OT agreements and the Phase 2 competition are not the same. The OT agreements seek *development* of launch service vehicles, while the Phase 2 competition seeks to procure *services*. There are even different competitions without exclusion of any potential sources. Thus, unlike in *RAMCOR*, any alleged violation of § 2371b does not allow the Government to "procure immediately" Phase 2 launch services from the OT award recipients, or for the awardees to "immediately commence work" on Phase 2 launch services.

Thus, this Court lacks jurisdiction over SpaceX's complaint for the additional reason that it does not allege any violation of any procurement regulation or statute.

IV.     We Defer To The Court On SpaceX's Transfer Request

SpaceX has requested that, if this Court finds that it lacks jurisdiction to entertain SpaceX's complaint, that the matter be transferred to the United States District Court for the Central District of California. Resp. Br. at 37-39. We do not take a position on SpaceX's request because although we have established that this Court lacks jurisdiction, we cannot decide the district court's jurisdiction.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss SpaceX's complaint for lack of subject matter jurisdiction.

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

OF COUNSEL:

ROBERT E. KIRSCHMAN, JR.
Director

ERIKA WHELAN RETTA
Air Force Legal Operations Agency
Commercial Law and Litigation Directorate
AFLOA/JAQC
Contract and Fiscal Law Division

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

GREGORY YOKAS
Space and Missile Systems Center
Office of the Staff Judge Advocate

/s/ Tanya B. Koenig
TANYA B. KOENIG
Trial Attorney
Commercial Litigation Branch,
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tele: (202) 305-7587
Tanya.B.Koenig@usdoj.gov

DOUGLAS EDELSCHICK
Trial Attorney
Department of Justice

July 9, 2019

Attorneys for Defendant